UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 2:26-cr- 145-SPC-NPM
18 U.S.C. § 371
(Conspiracy to Commit Offense
Against the United States)

WILLIAM BRITTENHAM

## INFORMATION

The Attorney for the United States, Acting under the Authority Conferred by

28 U.S.C. § 515, charges:

## COUNT ONE
**(Conspiracy to Commit Offense Against the United States –
18 U.S.C. § 371)**

A.      Introduction and Background

At times material to this Information:

1.      WILLIAM ("BILL") BRITTENHAM was the Vice President of

Company 1.

2.      Company 1 was owned by Coconspirator 1,[1] and Coconspirator 2 was

the President of Company 1 (and BRITTENHAM's direct supervisor).

---

[1] At some point during the relevant time period of the conspiracy, the on-paper ownership of Company 1 was transferred from Coconspirator 1 to another individual; BRITTENHAM knew that the "new owner" of Company 1 was a nominee owner—and knew that Coconspirator 1 remained the true owner and controller of Company 1.

3.     Company 1 held multiple contracts with the federal government as part of the United States Department of Agriculture and United States Department of Defense's Fresh Fruit and Vegetable Program ("DoD Fresh Program").

4.     In his role as Vice President of Company 1, BRITTENHAM was tasked with pricing the produce sold to the federal government under DoD Fresh contracts, and with providing information regarding the country, or state, of origin of produce provided under the DoD Fresh contracts.

### DoD Fresh Program

5.     The DoD Fresh Program provided fresh fruit and vegetables to schools and military bases across the continental United States (and in other parts of the world, like Guantanamo Bay).

6.     To administer the DoD Fresh program, the federal government contracted with winning-bid providers ("contract holders").

7.     Each contract holder was responsible for providing fresh produce to troops and schoolchildren in their awarded geographic zone.

8.     The Department of Defense—through its "Defense Logistics Agency" ("DLA")—oversaw the contracting process, as well as the general administration, of the DoD Fresh Program.

9.     DoD Fresh Program contracts required the contract holder to charge the government the *cost* of the product provided ("delivered price"), *plus* the contract holder's winning, per-unit distribution fee ("distribution price").    Thus, the

2

government was ultimately charged the "contract unit price" for each unit of product ("delivered price" plus "distribution price").

10. The distribution fee (or "distribution price") was an all-in fee; it included the cost of delivery, overhead expenses, profit margin, etc., for the contract holder.

11. The contract holder could not change its "distribution price" from its original (winning) offer.

12. Every two weeks, the contract-holder could request that the "delivered price" of a product be changed if the "delivered price" for that product changed—i.e., if the product started to cost the contract holder more, or less.

13. The contract holder made all of its price-change requests online in its school and troop "catalogs."

14. Before a contract holder was allowed to change a price, DLA had to determine whether the new price was "fair and reasonable."

15. To make its "fair and reasonable" determination, DLA could request an invoice from the contract holder. In other words, DLA could request that the contract holder send DLA an invoice to prove that the "delivered price" it sought to charge was the contract holder's actual receipted cost. The contract holder was required to provide its last invoice for the product (which featured a representative quantity).

16. Each DoD Fresh contract required the contract holder to employ "prevailing commercial methods" in the pursuit of discounts, rebates, allowances, or other similar economic incentives or benefits for the government throughout the performance of the contracts.

3

17. The contracts also required that schools be provided with only *domestic* produce.

18. Finally, each contract required that the contract holder "conduct [itself] with the highest degree of integrity and honesty."

19. Company 1 held DoD Fresh Program contracts for the "Florida North," "Florida Central," and "Florida South" zones.

### B. The Conspiracy

20. Beginning on an unknown date, but no later than in or around November 2017, and continuing to an unknown date, but at least in or around November 2022, in the Middle District of Florida, and elsewhere, the defendant,

### WILLIAM BRITTENHAM,

did knowingly and willfully combine, conspire, confederate, and agree with others, known and unknown to the Attorney for the United States (Acting under the Authority Conferred by 28 U.S.C. § 515), to commit wire fraud, in violation of 18 U.S.C. § 1343.

### C. Manner and Means of the Conspiracy

21. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a. It was part of the conspiracy that the conspirators would and did procure, or would and did cause Company 1 to procure, DoD Fresh Program contracts, including for the Florida North, Florida Central, and Florida South zones.

b. It was further part of the conspiracy that the conspirators would and did obtain, or would and did cause to be obtained, "gimmick invoices" which

4

were not representative of the price at which the conspirators could procure, and were procuring most, product. The "gimmick invoices" that the conspirators would and did obtain, or would and did cause to be obtained, were intentionally sought out to overcharge the government, and were *not* obtained by using prevailing commercial methods in the pursuit of discounts, rebates, etc.

c.      It was further part of the conspiracy that the conspirators would and did submit, or would and did cause to be submitted, to DLA the above-noted "gimmick invoices" in support of artificially high prices.

d.      It was further part of the conspiracy that the conspirators would and did submit, or would and did cause to be submitted, to DLA invoices that were not the "last invoice" and were not for a "representative quantity" of product.

e.      It was further part of the conspiracy that the conspirators would and did submit, or would and did cause to be submitted, to DLA invoices featuring product that was never supplied under any DoD Fresh contract; sometimes, the invoices were for "premium product" that went to private customers.

f.      It was further part of the conspiracy that the conspirators would and did acquire, create, found, own, operate, and control additional companies to further their pricing-fraud scheme against the DoD Fresh Program.

g.      It was further part of the conspiracy that the conspirators took steps, or caused others to take steps, to mask the true ownership and control of these additional companies—which were all actually owned and controlled by Coconspirator 1.

5

h.    It was further part of the conspiracy that the conspirators would and did cause these other companies (actually owned and controlled by Coconspirator 1) to supply inflated and fraudulent intercompany invoices to Company 1. These inflated and fraudulent intercompany invoices were intentionally sought out or created to overcharge the government, and were *not* obtained by using prevailing commercial methods in the pursuit of discounts, rebates, etc.

i.    It was further part of the conspiracy that the conspirators would and did submit, or cause the submission of, these inflated and fraudulent intercompany invoices from Company 1 to DLA.

j.    It was further part of the conspiracy that the conspirators would and did procure and distribute, or would and did cause the procurement and distribution, of non-domestic produce to the schools under the DoD Fresh Program.

k.    It was further part of the conspiracy that the conspirators would and did misrepresent, or would and did cause the misrepresentation of, the state and country of origin of the non-domestic produce being distributed to the schools under the DoD Fresh Program.

l.    It was further part of the conspiracy that the conspirators would and did take acts and make statements to hide and conceal, and to cause to be hidden and concealed, the objects and purposes of and the acts done in furtherance of said conspiracy.

D.    Overt Acts

22.    In furtherance of the conspiracy, and to effect its objects, the following overt acts, among others, were committed by conspirators in the Middle District of Florida and elsewhere:

| On or about date(s) | Act(s) |
|---|---|
| August 26, 2021 | The conspirators caused a Company 1 employee to send an interstate email to DLA containing a gimmick invoice to justify overpriced 88-count Oranges. |
| October 7, 2021 | The conspirators caused a Company 1 employee to send an interstate email to DLA containing a gimmick invoice to justify overpriced 24-count Romaine Lettuce. |
| May 26, 2022 | The conspirators caused a Company 1 employee to send an interstate email to DLA containing a gimmick invoice to justify overpriced Shredded Lettuce. |

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.    The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 18 U.S.C. § 371, as charged in Count One, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

SARA C. SWEENEY
*Attorney for the United States, Acting under*
*Authority Conferred by 28 U.S.C. § 515*

By:   _____
Chelsey Hanson
Assistant United States Attorney

By:   _____
Simon Eth
Assistant United States Attorney

By:   _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

8