AF Approval _TLK for SCN_                                   Chief Approval

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA

   v.                                   CASE NO. 2:26-cr-

WILLIAM BRITTENHAM

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Sara C. Sweeney, Attorney for the United States, Acting under Authority Conferred by 28 U.S.C § 515, and the defendant, William Brittenham, and the attorney for the defendant, Danielle O'Halloran, mutually agree as follows:

**A.  Particularized Terms**

   1.  **Count Pleading To**

The defendant shall enter a plea of guilty to Count One of the Information.  Count One charges the defendant with conspiring to commit an offense against the United States, in violation of 18 U.S.C. § 371.

   2.  **Maximum Penalties**

Count One carries a maximum sentence of five (5) years imprisonment, a fine of $250,000, or twice the gross gain or loss caused by the offense (whichever is greater), a term of supervised release of not more than three (3) years, and a special assessment of $100. With respect to certain

Defendant's Initials _WB_

offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.     Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which he is charged and to which he is pleading guilty.  The elements of Count One are:

1. Two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

2. The Defendant knew the unlawful purpose of the plan and willfully joined in it;

3. During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the information; and

4. The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

4.     Indictment Waiver

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

Defendant's Initials __WB__                    2

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement related to the defendant's association with Coconspirators 1 and 2.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to United States Department of Agriculture and United States Department of Defense.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant

Defendant's Initials _WB_                    3

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney's Office for the Middle District of Florida, and the defendant agrees that he cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _WB_                4

9.    Cooperation - Substantial Assistance to be Considered

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in the defendant's possession or control, and to be reasonably available for interviews which the United States may require.

If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney's Office for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.

If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as

Defendant's Initials _____

5

"substantial assistance" in accordance with the policy of the United States Attorney's Office for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).

In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney's Office for the Middle District of Florida, and the defendant agrees that he cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or the defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial, or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other

Defendant's Initials _WB_                    6

means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which he exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and

Defendant's Initials _____

7

after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials _____

8

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

## B.    **Standard Terms and Conditions**

### 1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory

Defendant's Initials ⟪WB⟫                    9

remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which he is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if he should violate the conditions of release, he would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from

Defendant's Initials _____    10

the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which the defendant pleads, to respond to comments made by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse,

Defendant's Initials _____        11

dependent, nominee, or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make

Defendant's Initials _____          12

recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between the defendant or the defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal his sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence

Defendant's Initials _____        13

violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or

Defendant's Initials _____        14

coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty and the elements thereof, including the penalties provided by law, and his complete satisfaction with the representation and advice received from his undersigned counsel. The defendant also understands that he has the right to plead not guilty, and that he has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in his defense; but, by pleading guilty, the defendant waives or gives up those rights and there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense to which the defendant pleaded, and if the defendant answers those questions under oath, on the record, and in the presence of counsel, the defendant's answers may later be used against him in a prosecution for perjury or false statement. The defendant also understands that he will be adjudicated guilty of the offense to which he has pleaded and, if the offense is a felony, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____

15

11.    Factual Basis

The defendant is pleading guilty because he is in fact guilty. The defendant certifies that he does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

From in or around November 2017, to in or around November 2022, defendant William ("Bill") Brittenham conspired to defraud the United States Department of Agriculture and United States Department of Defense's Fresh Fruit and Vegetable Program ("DoD Fresh" Program).

At all times material to the conduct charged in this case, the federal government (through the DoD Fresh Program) provided fresh fruit and vegetables to schools and military bases across the continental United States. The federal government utilized winning-bid providers ("contract holders") to supply the fresh fruit and vegetables to the military bases and schools—and then paid the contract holders for supplied product.

Each contract holder was responsible for supplying fresh fruit and vegetables to troops and schoolchildren in their awarded geographic zone.

Defendant's Initials  _WB_            16

The Department of Defense—through its "Defense Logistics Agency" ("DLA")—oversaw the contracting process, as well as the general administration, of the DoD Fresh Program.

At times material to the conduct charged in this case, defendant Bill Brittenham served as the Vice President of Company 1, and Company 1 held multiple DoD Fresh Program contracts (including the "Florida North," "Florida Central," and "Florida South" contracts).

DoD Fresh Program contracts required the contract holder to charge the government the *cost* of the product provided (i.e., no markup), *plus* the contract holder's winning, per-unit distribution fee. The distribution fee was an all-in fee; it included the cost of delivery, overhead expenses, and profit margin for the contract holder.

So, for example, if a contract holder supplied 30-pound bags of apples to the government under a DoD Fresh contract, and the contract holder paid $15 for each 30-pound bag of apples, the contract holder was required to charge the government $15 per bag of apples—plus its per-unit distribution fee. Thus, if the contract holder's per-unit distribution fee was $5, each 30-pound bag of apples would be $20—$15 cost (or "delivered price") + $5 distribution fee.

Defendant's Initials _____        17

The contract holder's distribution fee was always determined by its winning bid. The cost (or "delivered price") of the product, meanwhile, was determined—every two weeks—by the contract holder's actual receipted cost.

Every two weeks, the contract holder could request to change the price(s) charged to the government based on a change to the contract holder's actual cost(s). The contract holder made these price-change requests online in its school and troop "catalogs."

Before allowing a price change, DLA had to determine whether the new price was "fair and reasonable." To make this determination, DLA could request that the contract holder provide an invoice to justify the new price. In other words, DLA could ask the contract holder to provide an invoice showing that the "delivered price" it sought to charge was the contract holder's actual receipted cost. The contract holder was required to provide DLA its most-recent invoice that reflected a representative quantity of the product.

Each DoD Fresh contract required Company 1 to employ "prevailing commercial methods" in the pursuit of discounts, rebates, allowances, or other similar economic incentives or benefits for the government throughout the performance of the contract. Each contract also required Company 1 "to conduct [itself] with the highest degree of integrity and honesty."

Defendant's Initials ⬚  18

As noted, at times material to this case, defendant Bill Brittenham was the Vice President of Company 1, and Company 1 held multiple DoD Fresh contracts.

Company 1 was owned by Coconspirator 1.[1]

Coconspirator 2 was the President of Company 1 (and Brittenham's direct supervisor).[2]

Coconspirator 2 tasked Brittenham with helping execute a fraudulent price-gouging scheme against the DoD Fresh Program, and committing country-of-origin fraud against the DoD Fresh Program.

Brittenham knew that Coconspirator 1 was aware of, and had ultimate control over, the price-gouging scheme and country-of-origin fraud.

As to the price-gouging scheme:  There were two main manners and means to the scheme that Brittenham assisted Coconspirator 2 in executing—*first*, a manner and means involving "gimmick invoices," *and second*, a manner and means involving "inflated intercompany invoices."

---

[1] In the midst of the charged conspiracy, Coconspirators 1 and 2 conspired to conduct a sham transaction which transferred ownership of Company 1 to a nominee owner. Brittenham knew that this was a sham transaction, and that Coconspirator 1 remained the true owner and controller of Company 1.

[2] Toward the end of Brittenham's involvement in the conspiracy (in mid-to-late 2022), Coconspirator 3 began to take over some of Coconspirator 2's duties.

Defendant's Initials ⟮WB⟯          19

Initially, early in the conspiracy, the price-gouging scheme relied on gimmick invoices. In short, Coconspirator 2 would have Brittenham purchase a large quantity of product at a low price, and a small quantity of product at a high price, but charge the government based on the high price. In other words, Coconspirator 2 would have Brittenham intentionally seek out a few units of product from an expensive vendor so they could price gouge the government on all units of the product. If asked by DLA for an invoice to justify the high price of the product, the conspirators would cause lower-level employees of Company 1 to submit to DLA the gimmick invoice that Brittenham had procured—i.e., the invoice for the low-quantity, high-priced product. This was the conspirators fraudulently price gouging the government for double profits—one set of profits on the *product* that Company 1 was supposed to be selling to the government at its *cost*, and another set of profits that was already accounted for in the per-unit distribution fee that Company 1 committed to charge the government.

Brittenham was instructed to, and did, purposefully procure (or cause to be procured) numerous gimmick invoices as part of the fraud scheme. Brittenham was instructed to, and did, use these gimmick invoices to set fraudulently high prices on the school and military catalogs. Brittenham knew

Defendant's Initials ⟨initials⟩            20

that these gimmick invoices were *not* obtained using prevailing commercial methods in the pursuit of discounts, rebates, etc.

As just a few examples of the gimmick invoices that Brittenham procured (or caused to be procured), and that the conspirators then caused to be submitted to DLA to justify pricing:

- On or about August 26, 2021, Company 1 provided DLA an invoice for 88-count Oranges (dated August 20, 2021). The invoice showed Company 1 buying *15* cases of 88-count Oranges for $34 each. But Company 1's internal records show that, one day earlier, Company 1 received *2052* cases of 88-count Oranges for $27.50 each. Further, three days later (on August 23, 2021), Company 1 received *864* cases of 88-count Oranges for $28.95 each. Despite receiving—in a matter of days—*2916* cases of 88-count Oranges for $27.50 to $28.95 each, the conspirators caused Company 1 to submit to DLA an invoice showing it purchasing *15* cases of 88-count Oranges for $34 each. This invoice was not the last invoice, and did not reflect the use of prevailing commercial methods to obtain the best price. Nonetheless, it was submitted to DLA to justify the (fraudulently high) price that Company 1 was charging the federal government.

- On or about October 7, 2021, Company 1 provided DLA an invoice for 24-count Romaine Lettuce (dated September 30, 2021). The invoice showed Company 1 buying *10* cases of 24-count Romaine Lettuce for $39 each. But Company 1's internal records show that—on the same day that it received *10* cases of 24-count Romaine Lettuce for $39 each— it received *35* cases for $27.33 each. One day earlier, it received *70* cases for $27.20 to $27.30 each. Four days later, it received *180* cases for $26.70 to $27.30 each. And, the day before its invoice submission, it received *70* cases for $15 each. In other words, despite receiving—in a matter of days—*hundreds of cases* of 24-count Romaine Lettuce for $15 to $27.33 each, the conspirators caused Company 1 to submit to DLA an invoice showing it purchasing *10* cases for $39 each. This invoice was not the last invoice, and did not reflect the use of prevailing commercial

Defendant's Initials _____    21

methods to obtain the best price. Nonetheless, it was submitted to DLA to justify the (fraudulently high) price that Company 1 was charging the federal government.

- On or about May 26, 2022, Company 1 provided DLA an invoice for 4/5# Shredded Lettuce priced at $23 each (dated May 24, 2022). The invoice showed Company 1 buying _10_ cases of Shredded Lettuce for $23 each. But Company 1's internal records show that, in the three days before receiving the _10_ cases of $23 Shredded Lettuce, Company 1 received _70_ cases for $16.80 to $18.15 each. Moreover, the day after receiving the _10_ cases of $23 Shredded Lettuce, Company 1 received _55_ cases for $16.70 to $16.95 each. Despite receiving, in a matter of days, _125_ cases of Shredded Lettuce for $16.70 to $18.15 each, the conspirators caused Company 1 to submit to DLA an invoice showing it purchasing _10_ cases of Shredded Lettuce for _$23_ each. This invoice was not the last invoice, and did not reflect the use of prevailing commercial methods to obtain the best price. Nonetheless, it was submitted to DLA to justify the (fraudulently high) price that Company 1 was charging the federal government.

Later in the conspiracy, the fraud scheme evolved and began to rely on inflated-intercompany invoices. In short, after Coconspirator 1 acquired or founded additional businesses, Coconspirator 2 would have Brittenham procure an intercompany invoice with an inflated price to overcharge the federal government (rather than going to the trouble of obtaining a third-party gimmick invoice).

For example, in or around early 2019, Coconspirator 1 bought Company 2. Company 2 was a food-processing business in central Florida that took raw, or bulk, fruit-and-vegetable product, processed the product, and

Defendant's Initials ___/WB/___          22

packaged the product into serving-size containers to be served to schoolchildren. These serving-size containers were often referred to as "snack packs." So, for example, Company 2 would obtain large quantities of grapes (from Brittenham and Company 1), destem and clean the grapes as needed, and package the grapes into small containers (e.g., 2 ounce or 3 ounce) to be provided to school children.

Company 2 sold "snack packs" to various private customers for significantly lower prices than Brittenham (based on instructions from Coconspirator 2) had Company 2 charge Company 1 for DoD Fresh Program orders. When asked to justify the (incredibly high) price Company 1 sought to pass onto the federal government, the conspirators would cause lower-level employees of Company 1 to submit to DLA inflated intercompany invoices from Company 2 to justify the price.

As to the country-of-origin fraud: The DoD Fresh Program required that schools be provided with *domestic* produce; federal funds could not be used to purchase *foreign* produce for schools.

Brittenham knew this, and Brittenham knew that Coconspirator 2 knew this. Indeed, Brittenham knew that the DoD Fresh Program's domestic-produce requirement was widely known at Company 1 and Company 2.

Defendant's Initials _UB_                    23

Nonetheless, at the direction of Coconspirator 2, Brittenham procured foreign produce at certain times of year to provide to the schools. For example, at the direction of Coconspirator 2, Brittenham—at certain times of the year—procured large amounts of foreign grapes (from Peru, Chile, and/or Mexico) to be packaged into snack packs.

Brittenham, at the direction of Coconspirator 2, told employees of Company 1 to list the grape snack packs as being from "Florida" in the school catalog(s)—even though Brittenham knew that the grapes were not from Florida. When Brittenham questioned Coconspirator 2 about this mislabeling practice, Coconspirator 2 told Brittenham to use "Florida" since the snack packs were "processed and packaged" in Florida. Brittenham knew this made no sense, given that the produce was grown and harvested outside the United States, but nonetheless did as he was instructed by Coconspirator 2.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

Defendant's Initials _____        24

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___7th___ day of ~~April~~ May, 2026.

SARA C. SWEENEY
*Attorney for the United States,*
*Acting under Authority Conferred*
*by 28 U.S.C § 515*

_____
William Brittenham
Defendant

_____
Chelsey Hanson
Assistant United States Attorney

_____
Danielle O'Halloran
Attorney for Defendant

_____
Simon Eth
Assistant United States Attorney

_____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

Defendant's Initials _____        25